G. O. BUNTYN *et al.*, Adm'rs of G. Buntyn, dec'd, *v.*
GEO. C. & W. R. HOLMES, Adm'rs of Geo. L.
Holmes, dec'd, *et al.*

1. ADMINISTRATOR. *Judgment against. Right of heirs to contest. Technical defenses.* Heirs have the right to make all defenses to a judgment against the administrator when it is sought to subject the land descended to them, but this right does not extend to mere technical objections or irregularities, not going to the question of the liability of ancestor for the debt, sufficiency of assets, or other meritorious defenses.

2. SAME. *Heirs. Estoppel.* If the heirs are the administrators and make an agreement to have the land sold if claimant will allow the issue of fully administered to be found in their favor, they will be estopped as heirs from denying that the lands are liable for the judgment, and from insisting there were sufficient personal effects.

3. ANCESTOR'S LAND. *Alienation by heir.* Where land was mortgaged by heirs and afterwards levied on by their execution creditors and sold, the land may be sold by decree of court to satisfy a judgment against ancestor. An heir has no right to mortgage ancestor's land before payment of the debts, and the sale under execution was invalid, as the legal title was not in the heirs, they having conveyed by trust deed. Secs. 1762, 3, 4 and 5, and Secs. 2253, 2265-6 of Code examined, but the question as to power of heir to sell land descended so as to defeat the collection of ancestor's debt, not determined.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDOWELL, Ch.

ESTES & ELLETT for complainants.

GEO. GILLHAM, CRAFT & COOPER and FLIPPIN & FLIPPIN for defendants.

DEADERICK, C. J., delivered the opinion of the court.

The bill is filed to subject certain real estate of Geo. L. Holmes, deceased, which descended to his heirs, Geo. C. and W. R. Holmes, his only heirs at law, and who are also his administrators, to the payment of a judgment at law, recovered by complainants against said administrators of Holmes.

Other parties defendant claim title to parts of said lands by deeds of trust made to secure debts due from the heirs at law, and still others claim title in virtue of execution sales for satisfaction of debts due from the said heirs.

The administrators of Holmes were sued in the circuit court of Shelby county, for a debt due by their ancestor to the intestate of complainants, and judgment was had, and now when they seek to · subject the lands descended, they are met by the heirs with the defense that the judgment was irregular and erroneous, because the note sued on belonged to the estate of one Mrs. Titus, and was payable to her, and should have been sued for in the name of her administrator, whereas it was in fact sued for in the name of complainants, administrators, as aforesaid, and judgment rendered in their favor as such administrators.

It is further insisted by said heirs, that at the time of the rendition of said judgment against them as administrators, there were personal assets in their hands sufficient for its satisfaction, notwithstanding the judgment to the contrary. They say that the plea of *plene administravit* was found against them by the jury,

but that subsequently the said finding and judgment were set aside and vacated, and judgment entered that they had fully administered, etc., as the record shows.

The heirs claim that they are entitled to make all defenses to the claim sued on, when it is sought to subject the land descended to them, that they might have made as administrators. And such seems to be the current of our decisions upon this point. But we do not understand this right to extend, to mere technical objections or irregularities, not going to the questions of the liability of the ancestor for the debt sued for, or sufficiency of assets, or other meritorious defense. The statutes intended to protect the heir against fraud and collusion between the creditors and administrator, and to give him an opportunity to show some substantial reason why his lands should not be subjected to the satisfaction of a judgment to which he was no party at the time of its rendition.

In this case it is shown that the administrators of Holmes were his only heirs at law and distributees, and that it was at their request and upon their agreement to sell lands and pay the debt, that plaintiffs consented to a finding and judgment in their favor upon their plea of *plene administravit.* They were the owners of the whole estate, real and personal, of their ancestor, which was charged in their hands with the payment of their intestate's debts. And although, as a general rule, judgments conclude parties in the character in which they are sued, yet upon the facts in this case, we hold that as heirs the defendants, Geo. and W. R. Holmes, are estopped to deny that the

21—VOL. 9.

land in their hands is liable for said debt, for it was by their act and conduct and at their instance, that by said judgment it became liable, if the judgment itself is valid.

Complainants intestate was the administrator of Mrs. Titus, and her sole distributee. He had settled up said estate, and held the note of Holmes, on which the judgment was had, and which was payable to Mrs. Titus. Suit was brought, or about to be brought, in the name of complainants, as G. Buntyn's administrators, but the counsel for defendants took exception to this, and thereupon administration *de bonis non* on Mrs. Titus' estate was taken out; when this was done, counsel for defendants, to save trouble and expense, withdrew the objection. It was in fact more technical than substantial. The beneficial interest in the note belonged to complainants' intestate. No one contested his right to the fund when collected, and although the recovery in the names of complainants was irregular, yet it puts the fund where it belonged, and no one was prejudiced thereby.

It appears from the record, that in March, 1871, W. R. Holmes executed a deed of trust to Stephens, trustee, which on its face recites that it is to secure $1,140, that day loaned him by Thos. R. Smith, and fees due said Smith and W. H. Stephens for professional services, which fees are all due to said Smith. This trust deed embraces land sought to be reached by this bill.

Pitzer Miller and others obtained judgment at law, executions from which were levied on land previously

·conveyed by said heirs, which were sold under said executions. The chancellor rendered a decree in favor of complainants for $3,343.15, to be satisfied out of the lands descended to the said heirs of Geo. L. Holmes, giving prior right of satisfaction to one Dohan out of certain land described, and whose claim is not here contested, and declaring that said administrators were entitled to five per cent. commissions on $9,684.20 of proper disbursements of the personal estate made by them, and that they be also allowed for any advances out of their personal means, and for these sums it was declared said administrators were entitled to satisfaction out of proceeds of sale of lands before complainants.

It was further declared that the execution sales of the land were void and communicated no title to the purchasers, because the legal title was not in the debtors at the time of the sale, and the cross-bills of these creditors were dismissed.

The chancellor then decrees that all of the alienations by the heirs of said Geo. L. Holmes, deceased, except that to Dohan, are invalid as against complainants' claim, the court being of opinion that none of them were *bona fide* alienations as against the claim of complainants. A sale of the land is ordered, and proceeds directed to be applied as hereinbefore indicated.

From this decree three special appeals are prosecuted in this court:

First. Complainants appeal from so much of said decree as allows commissions to said administrators of Holmes, and gives such commissions priority over their claim.

Second. Geo. C. Holmes and the representatives of his deceased brother, W. R. Holmes, appeal from so much of the decree as allows the debt of complainants, and provides for its satisfaction out of the lands.

Third. Pitzer Miller, and the executor and executrix of Thomas R. Smith, appeal from so much of the decree as allows complainants' claim and dismisses their respective cross-bills, and denying the relief claimed by them.

As already indicated, we are of opinion that the judgment of complainants is valid, and that the heirs of Geo. L. Holmes, deceased, are estopped to deny the truth of the finding and judgment of the court, as to the exhaustion of personalty, by reason of their interference in procuring such finding. And it would be inequitable to allow them as heirs at law to take advantage of their own wrong, to the prejudice of complainants.

The question then is, have complainants' rights and remedies been impaired by the sales under execution to Miller, or the deed of trust to secure Smith?

The sale under Miller's execution conveyed no title, because at the time of judgment and sale, the legal title was not in either Geo. C. or W. R. Holmes, the judgment debtors. It, therefore, was no impediment to the relief sought.

The deed of trust made to secure Smith was made some ten months after the rendition of complainants' judgment. Said Smith having been counsel of said administrators in the suit against them, was informed of all the facts connected with the rendition of said

judgment, and that it must be satisfied out of the real estate as agreed and understood at the time of its rendition. Beside, although the deed recites that a part of its consideration was advanced at the time of its execution, yet all the evidence upon this point found in the record tends to show that the consideration was in fact pre-existing indebtedness.

By sections 1762, 3, 4 & 5 of the Code, all *devises* of lands, or rents and profits thereof, made to defraud creditors, are made void, and the creditor is given an action against such devisee and heirs of the debtor, just as such action is given against the debtor's heirs at law. And if the devisee "sell, alien, or make over the lands," before action brought, he shall be liable for the value of the lands so "sold, *aliened* or made over, and execution may have." But lands "*bona fide aliened,*" before the action brought, shall not be liable to such execution.

These provisions, it is argued, apply only to cases of fraudulent devises of lands, etc. And the terms and language of the several sections referred to, sustain this construction.

Sections 2253 and the three succeeding sections, under the head of "Proceedings by Creditor, who is Administrator," prescribe the mode of proceeding by a creditor who is also the administrator, to subject land to payment of debts, where the personal assets are insufficient for that purpose. The last of the three sections cited provides, if an heir or devisee alien the land before action brought, he shall be answerable for the ancestor's debts to the value of the land.

But it is not provided, as in cases of fraudulent devisees, in express terms, that such land shall not be liable to execution in the hands of a *bona fide* alienee. But, perhaps, as this special remedy against the heir or devisee is given, it would, by fair construction, release the land in the hands of a *bona fide* alienee from liability.

It has been plausibly and ably argued, in construction of these statutes in connection with others upon the same general subject, those in respect to fraudulent devises, being found under the head of void contracts; the others, in relation to the proceedings by a creditor, who is also administrator, that the exemption of the land in the hands of an alienee, is provided, only in the two classes of cases mentioned. And as no such provisions or exemptions are embodied in sec. 2267 (act of 1827) under which this bill was filed, that such lands would be subject under that act to sale, at the suit of the administrator or any *bona fide* creditor in the hands of an alienee of the heir. But as it is not essential to the determination of the questions in this case, we do not decide what are the rights of creditors, in cases of *bona fide* alienation of lands by heirs descended to them.

It will be observed that it is lands, etc. "*bona fide* aliened," which are not liable to execution under sec. 1765 of the Code. And the same term, "alien," is used in sec. 2256. This term implies the absolute divestiture of all title in the grantor and vesting it in the grantee, and also a surrender of the possession of the thing conveyed. See 1 Bur. L. Dic., p. 82–3,.

Buntyn *v.* Holmes.

where it is said "a conveyance by way of mortgage is not an alienation."

A mortgage is a conveyance to secure a debt, leaving the possession with the mortgager, and the right to retain the property upon payment of the debt.

But it appears that Smith had knowledge of the necessity of a sale of the land for the payment of complainant's debt, and that afterwards the deed of trust or mortgage was executed to secure in part, if not in whole, a pre-existing debt. Under these facts we think his claim was properly postponed to that of complainants.

Except for the amount of personal assets, $9,000 and odd, we think the administrators ought not to be allowed commissions to the prejudice of the complainant's claim, and in this respect the decree will be modified; and no claim for commissions will be allowed, except as above stated.

And with this modification the chancellor's decree will be affirmed, and the costs of this court will be paid out of proceeds of sale of land, and the costs below as adjudged by the chancellor, and the cause will be remanded for further proceedings.